# NORTHLAND PRODUCE COMPANY v. A. D. STEPHENS.[1]

November 10, 1911.

Nos. 17,165—(20).

**Payment — finding sustained by evidence.**

Findings of the trial court that a debt, to secure the payment of which plaintiff executed and delivered to defendant a deed of certain property, had not been paid in full, *held* sustained by the evidence.

[1] Reported in 133 N. W. 93.

### Estoppel of plaintiff corporation.

Plaintiff, a corporation, in consideration of a loan of money to carry on its business, in addition to the repayment of the money borrowed, agreed to pay an indebtedness to the lender of another corporation, to whose property, good will, and business plaintiff had succeeded. It is *held* that, since plaintiff received and retained the benefits of the transaction, it will not be heard to allege its want of authority or power to enter into the contract.

### Minutes of corporation — evidence.

The minutes of a private corporation are at most only prima facie evidence against third persons, and are open to contradiction or explanation in an action involving transactions of which the minutes purport to be a record.

Action in the district court for Beltrami county to cancel a deed of certain premises and have the title thereto decreed to be in plaintiff, as against defendant.

The complaint alleged that the deed was executed for the sole purpose of securing an indebtedness from plaintiff to defendant and that the instrument, though in form a warranty deed, was in fact a mortgage and was so understood by the parties; that it was further understood and agreed that when the debt of plaintiff to the Merchants National Bank of Crookston should be paid, defendant would reconvey the premises; that plaintiff had paid the bank its total indebtedness, principal and interest; that it duly demanded a reconveyance from defendant in accordance with the agreement, but that defendant refused to convey.

The answer, among other matters, set out the incorporation of plaintiff as a reorganization of the Northern Trade Company; alleged that at or about the time on which incorporated the company named owed the bank on certain notes the sum of $1,800; that the company conveyed to plaintiff all its assets in Beltrami county, including the real estate described in the complaint; that defendant agreed to make the advances desired by plaintiff to complete its cold-storage warehouse, and to accept a deed of the property as security for the loan to be made and the amount already borrowed by the Northern Trade Company; that the sum of $1,800, except $100 paid on account, was still unpaid.

The reply alleged that the Northern Trade Company and plain-

tiff were two entirely separate corporations, in no way related to each other; that the former had nothing whatsoever to do with the latter and was in no way interested in its business. It also set up that if the agreement alleged in the answer was entered into between defendant and Lunn, as an officer of the plaintiff, the same was never authorized by its stockholders or board of directors and was not authorized by its articles of incorporation, was not its agreement and was ultra vires.

The case was tried before Stanton, J., who made findings and as conclusion of law ordered judgment of dismissal of the action. Plaintiff's motion for amended and additional findings was denied. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*Reynolds & McClearn,* for appellant.

*Martin O'Brien,* for respondent.

BROWN, J.

The evidence in the case shows and tends to show the following facts: The Northland Trade Company was a corporation organized under the laws of this state, originally located and doing business in Wadena county. It transferred its business to Bemidji, and for a year or more prior to the time of the transaction involved in this action conducted its affairs at that place. For some reason, not clearly disclosed by the record, the officers and directors of the corporation conceived the idea of a reincorporation under a new name, the new concern to take over all the property and business of the old at Bemidji. This was apparently for the purpose of infusing new life into the enterprise and continuing and extending the business. The Northland Produce Company was then incorporated by the officers and stockholders of the trade company and others, and subsequently took over the entire property, good will, and business of the old concern at Bemidji, which, though not dissolved, ceased to do business at that place. The trade company was at this time indebted to the Merchants National Bank of Crookston, of which defendant herein was cashier, in the sum of about $2,000.

Prior to and during the proceedings for the reorganization, nego-

tiations were had between the officers of the corporation and defendant Stephens, representing his bank, for a loan of money to enable the new concern to complete the construction of a cold storage plant which the trade company had commenced, but had not completed. After the organization of the produce company, the secretary thereof, after so negotiating with Stephens, reported to the board of directors, at a meeting held on March 9, 1907, that Stephens, for the bank, would advance to the new concern money to complete its plant, on condition and consideration that the produce company convey to him certain real property received by it from the trade company, upon which was situated the cold storage plant referred to, as security for the repayment of advances to be made and also the payment of the $2,000 indebtedness of the trade company.

That the proposition was then submitted to the board of directors there is no substantial controversy. That it was at that meeting accepted by the board two members of the board affirmatively declared. The third member, who was called as a witness, said that the matter was discussed, but he had no recollection of an acceptance being made at that time. The court was justified in finding that soon after this meeting Stephens was informed of this acceptance; and, while the evidence is not as clear as might be desired, it sufficiently appears that he was so informed prior to March 23, 1907.

On that date there was another meeting of the directors of the produce company, at which the following resolutions were adopted:

"Resolved, that A. D. Stephens of Crookston, Minnesota, be and is hereby appointed trustee of the real property of the Northland Produce Company, to hold same in trust and as security for loans made to said company by said A. D. Stephens, trustee, or by the Merchants National Bank of Crookston, Minnesota, and that said property be deeded to said A. D. Stephens as such trustee.

"Be it resolved, that John D. Lunn, secretary and treasurer, is hereby authorized to borrow from said A. D. Stephens, trustee, or said bank, a sum of money not to exceed seven thousand ($7,000) dollars, and shall give for the same a note or notes of this company, executed in corporate form, and, further, that said A. D. Stephens, trustee, shall give in writing to this company an agreement stating

his rights as trustee, and agreeing to deliver by warranty deed said real property back to said company, upon full payment of the company's obligations to him, A. D. Stephens, or the Merchants National Bank by said company."

But the resolutions, which were recorded in the minutes of the meeting, were never called to the attention of Stephens or the bank, and there is no evidence that Stephens knew anything about them. But the evidence does show—at least tends to show—that the transaction was completed, the property deeded to Stephens, and the money advanced by the bank, upon the basis of the proposition which was accepted at the March ninth meeting of the board of directors. The secretary of the produce company, who was also its general manager, and who, acting for the corporation, closed the transaction, Stephens, and MacGregor, who as the then cashier of the bank accepted the deed, all so testified. The bank thereafter advanced from time to time $5,000 to the produce company, and the same has been repaid in full.

The plaintiff thereafter brought this action to compel a reconveyance of the property so transferred to Stephens; a reconveyance having been refused by him until the trade company debt was paid. This the plaintiff refused to pay, claiming that the deed was not given as security therefor, but solely for the advances to be made to the produce company. The trial court in substance and effect found that the produce company assumed that debt, and that the deed was executed and delivered as security for its payment, as well as for the payment of advances to be made the new company, and ordered judgment for defendant. Plaintiff appealed from an order denying a new trial.

It is contended by plaintiff on this appeal (1) that the findings of the trial court, in respect to the assumption of the debt of the trade company and that its payment was secured by the deed, are not sustained by the evidence; (2) if the findings be held supported by the evidence, that the contract was beyond the authority and power of the plaintiff corporation, and ultra vires and void; and (3) that a new trial should be granted for errors committed on the trial in

rulings on the admission and exclusion of evidence, and also for misconduct on the part of the trial court.

1. The contention that the evidence fails to support the findings must be resolved against the plaintiff. Within the rule guiding this court in such cases, we have only to inquire whether the evidence is clearly and palpably against the findings. If there be evidence in the record fairly tending to support the findings, they must be sustained.

The witnesses Russell, Lunn, Stephens, and MacGregor all testified to the facts essential to support the findings, and it was for the trial court to say whether they told the truth, or whether their version of the transaction was the mere framework of an afterthought. Witnesses Lunn and Russell testified to the fact that the board of directors accepted defendant's proposition to advance money to the new corporation on consideration that the debt of the old concern be secured by the trust deed. If this testimony be true, a contract was then entered into between the parties, even though it was not reduced to writing or spread upon the minutes of the corporation.

It is well settled that a private corporation is bound by its parol contracts, except, perhaps, where by law they are required to reduce their agreements to writing. 10 Cyc. 1031; Ten Eyck v. Pontiac, 74 Mich. 226, 41 N. W. 905, 3 L.R.A. 378, 16 Am. St. 633.

The claim that this was the contract between the parties is corroborated by the subsequent conduct of plaintiff. In May, following the completion of the bargain and the execution of the deed, the produce company made a payment upon the old debt, and applied for and obtained an extension of the time of payment of the balance due thereon. The letter so remitting the payment and asking for an extension was written upon the letter paper of plaintiff, and was signed in plaintiff's name by its secretary. And, though it appears that the affairs of both corporations at the time were conducted by the same persons, it was for the trial court to say whether this application was in the interests of plaintiff and for its benefit, or for the benefit of the old company.

Again, the contract claimed is not at all unusual in such cases. Here the old company was indebted to defendant or his bank, and had sold and transferred all its property, assets, and business to the

new company. Defendant had the right, before the transfer, at least, to resort to that property for the payment of his debt. The new company required more money for the completion of the plant started by the old, and in view of the transfer of the entire property and business at Bemidji, practically all the old concern possessed, it was perfectly natural that defendant insist that in consideration of further advances the new concern pay the old debt, since it owned or was about to acquire all the property.

Some confusion appears in respect to the matter by subsequent correspondence upon the subject. But this correspondence, the trial court may well have determined, concerned only the amount which defendant had agreed to advance. He insisted that the amount was to be limited to $5,000; this, including the old, making the total debt $7,000; while Lunn, the secretary, seems by his letters to have understood the agreement to be for an advance of $7,000, without regard to the old debt. It was for the trial court to reconcile the conflict in the evidence and to ascertain the facts.

The resolution of March 23 contains no reference to the old debt, but this is not conclusive against defendant. It was not adopted by the corporation at his request, nor had he any notice of the same. He was not required, before trusting the company, to ascertain what its records contained. Hastings Malting Co. v. Iron Range Brewing Co. 65 Minn. 28, 67 N. W. 652. Records of private corporations are at most only prima facie evidence, are not conclusive upon strangers to the corporation, and are open to contradiction or explanation by parol evidence. State v. Guertin, 106 Minn. 248, 119 N. W. 43, 130 Am. St. 610. If this resolution was intended as an expression of the contract as authorized by the meeting of March 9, it was incomplete, and cannot be held to abrogate the agreement theretofore entered into by the acceptance of defendant's proposition at that meeting, especially so since defendant was not informed thereof before completing the transaction.

The fact that defendant brought an action against the trade company upon the old debt, and recovered therein a judgment against it, is of no special significance. Under the contract as claimed by defendant, plaintiff was at most only secondarily liable for that debt,

and it is quite clear that defendant cannot be held to have lost or waived his rights against plaintiff by attempting to collect the debt from the principal debtor. It was for the trial court to say whether this act on the part of defendant tended, and, if so, to what extent, to contradict his theory of the contract. We therefore conclude, though the evidence is conflicting in some material respects, that the case is not brought within the rule which justifies this court in holding that the trial court proceeded clearly and palpably against the evidence.

2. The further contention that the contract, conceding it to have been made as claimed by defendant, was beyond the authority of the corporation and void, is not sustained. Plaintiff having succeeded to all the rights, property, good will, and business of the trade company, and, to enable it to complete the plant so acquired and to continue the business, having obtained a loan of money from defendant in consideration of its agreement to pay the debt of its predecessor, even if beyond its powers as limited by its charter, will not, having received all the benefits of the transaction, be permitted to plead its want of authority to enter into the agreement. Hunt v. Hauser Malting Co. 90 Minn. 282, 96 N. W. 85; Central Bldg. & Loan Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544; Moore v. County of Ramsey, 104 Minn. 30, 115 N. W. 750; Clearwater County Bank v. Bagley-Ogema Tel. Co. supra, page 4, 133 N. W. 91.

3. The other assignments of error present no sufficient reason for granting a new trial. The pleadings, properly construed, presented the issues substantially as covered by the findings, and there is no substantial basis for the contention that plaintiff was in any way prejudiced or prevented from presenting all its objections and defenses to the alleged contract. The question whether plaintiff was released by an extension of the time of payment granted by defendant to the trade company was not involved under the pleadings, nor does the record disclose that plaintiff was prevented from presenting the question by any action or ruling of the court. The trial court found that plaintiff "assumed" the old debt, and it is claimed that the answer of defendant made no such claim. That by the transaction plaintiff became responsible for the payment of the debt, the contract

having been made as claimed by defendant, seems quite clear. It is immaterial, then, whether it be said that plaintiff assumed or agreed to pay it, or its liability be expressed in some other language.

The order appealed from is affirmed.

LEWIS, J. (dissenting).

I dissent. The secretary of the plaintiff, Lunn, and the vice-president attested the minutes, as written up by Lunn, of the meeting held March 9, and also of the meeting held March 23. Conceding that some sort of a proposition was submitted by Lunn to the directors at the meeting of March 9, there is no tangible evidence that a final resolution was then passed, or at any other meeting, by which the corporation assumed the debt of the trade company, or authorized the directors to deed the real estate over to Stephens for security for such a debt. The record absolutely contradicts Lunn's testimony that he must have failed to record in the minutes the resolution which he thinks was passed March 9. His evidence is contradictory and unsatisfactory, and it should not be accepted as sufficient to impeach his own record, solemnly made and attested by himself and another officer. That the talk, whatever it was, between the directors at the meeting of March 9, was not final and binding upon the corporation, conclusively appears by the action of the board at the subsequent meeting of March 23. Lunn participated in the proceedings of that meeting, and deliberately took part in the passage of a resolution which denied the authority claimed. Whatever money was loaned by the bank or Mr. Stephens was subsequent to the meeting of March 23, and unquestionably was in pursuance of the authority thereby conferred. There is no evidence that the money was loaned to the plaintiff company in reliance on the action of the board of directors at the meeting of March 9. In fact, Mr. Stephens repudiated all agreements to extend credit by his letter of June 28.

I register my protest against impeaching such a record by the character of evidence here relied on, and I consider the evidence so manifestly and palpably against the decision that a new trial should be granted.